# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

WARDELLE E. BANKS, JR., ADMINISTRATOR
OF ESTATE OF CLARA CUMMINGS BANKS,
DECEASED, *et al.*,

      Plaintiffs,

v.                                Civil Action No. 3:12cv201

GENERAL MOTORS LLC, *et al.*,

      Defendants.

## REPORT AND RECOMMENDATION

This matter comes before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) for a Report

and Recommendation on Plaintiffs Wardelle E. Banks, Jr. ("Administrator") and Yvonne Banks

Gregory's[1] (collectively, "Plaintiffs") Motion to Remand (Docket No. 15) and Defendant

General Motors LLC ("GM LLC") Motion to Amend Answer to Complaint (Docket No. 17).

The parties adequately presented the facts and legal contentions on the record such that oral

argument would not aid the decisional process, and the matter is ripe for disposition. For the

reasons stated below, it is RECOMMENDED that the Court DENY Plaintiffs' Motion to

Remand and GRANT GM LLC's Motion to Amend Answer.[2]

---

[1] The Complaint caption names "Yvonne Gregory Banks" as a plaintiff, but the body of the Complaint identifies her as "Yvonne Banks Gregory." (*See* Notice of Removal ("Not. Removal") Ex. 1 Compl.) (Docket No. 1-1.) The Court concludes the proper name of this party is Yvonne Banks Gregory and will refer to this individual as Ms. Gregory or Yvonne Gregory.

[2] Because the Court recommends denial of Plaintiffs' Motion to Remand, the Court also recommends denial of Plaintiffs' request for attorneys' fees.

## I. Factual and Procedural Background

On November 10, 2009, Clara Banks rode as the front-seat passenger in a 2007 GM

Envoy Denali, VIN 1GKET63M972229892 ("the Envoy") owned and driven by her daughter

Yvonne Banks Gregory. (Compl. ¶ 1.) Another car rear-ended the Envoy as Yvonne Gregory

prepared to make a right turn into her driveway. (Compl. ¶ 1.) As a result of the collision, the

Envoy rolled onto its roof. (Compl. ¶ 2.) The roof crushed above Clara's head, forcing her head

downward, closing her airway, and resulting in her death. (Compl. ¶ 2.)

On November 9, 2011, Plaintiffs filed suit in the Circuit Court for the City of Richmond,

alleging negligent failure to warn, negligent design and manufacture, breach of express and

implied warranties, violations of the Virginia Consumer Protection Act,[3] claims for punitive

damages, and claims for "bystander liability"[4] against several defendants: (1) GM LLC;

(2) Motors Liquidation Company; (3) General Motors Corporation; (4) General Motors

Company; and (5) Greenbrier Oldsmobile-GMC Trucks, Inc. ("Greenbrier GMC"). (*See* Not.

Removal ¶ 13; *See generally* Compl.)

---

[3] Va. Code §§ 59.1-196 to -207.

[4] Yvonne Banks Gregory alleges GM LLC, Motors Liquidation Company, General
Motors Corporation, and General Motors Company (collectively "GM") and Greenbrier GMC's
negligence "caused [her] severe physical injury and illness in witnessing the injury and death of
her mother. . . . As a direct and proximate cause of GM's negligence, [Ms. Gregory] has and will
continue to suffer mental anguish, the loss of society, companionship, guidance, support and
services of [her] mother." (*See* Compl. ¶¶ 50, 74.) The Court notes that Count XI attempts to
impose bystander liability against Greenbrier GMC, although Plaintiffs refer to GM's negligence
in Count XI. The Court perceives this as a typographical error.

On March 16, 2012, GMC and GM LLC (collectively, "the GM Defendants") filed their

Notice of Removal.[5] (Docket No. 1.) The GM Defendants removed due to the lack of subject

matter jurisdiction, relying on the application of the fraudulent joinder doctrine to dismiss the

only nondiverse defendant, Greenbrier GMC.[6] (See Not. Removal ¶¶ 11, 12.)

On April 11, 2012, Plaintiffs filed a Motion to Remand and Incorporated Memorandum

in Support of Motion to Remand ("Mot. Remand"). (Docket No. 15.) On April 23, 2012,

Greenbrier GMC filed its Opposition to Motion to Remand ("Greenbrier GMC Opp'n").

(Docket No. 20.) On April 25, 2012, the GM Defendants filed their Memorandum in Opposition

to Motion to Remand ("the GM Defs.' Opp'n"). (Docket No. 21.) On May 2, 2012, Plaintiffs

filed their Combined Reply in Support of Motion to Remand ("Pls.' Reply"). (Docket No. 22.)

Also on April 11, 2012, GM LLC filed its Motion to Amend/Correct Answer to Complaint ("GM

LLC Mot. Amend"). (Docket No. 17.) Plaintiffs failed to respond to GM LLC's motion.

By Order entered June 1, 2012, the Honorable Robert E. Payne referred the Motion to

Remand and Motion to Amend to the undersigned magistrate judge. No party requested a

hearing on these pending motions.

---

[5] The Notice of Removal indicates the parties stipulated to the dismissal of: (1) Motors Liquidation Company; (2) General Motors Corporation; and (3) General Motors Company. (See Not. Removal ¶ 4 n.1.) The Court notes that the stipulation of dismissal, attached as Exhibit 2 to GM Defendants Notice of Removal, is not signed. Because General Motors Company joined to remove this action and joined to oppose the motion to remand, the Court assumes that General Motors Company remains a party to this litigation.

[6] Greenbrier GMC is a Virginia corporation with its principal place of business in Virginia. (See Not. Removal ¶ 8.) GM LLC is a Delaware limited liability company with its principal place of business in Michigan. (See Not. Removal ¶ 5.) General Motors Company is a Delaware corporation with its principal place of business in Michigan. (See Not. Removal ¶ 5.) Plaintiffs are Virginia citizens. (See Compl. ¶ 3.)

## II. Plaintiffs' Motion to Remand

### A.   Standard of Review:  Removal and Remand

Title 28, United States Code § 1447(c) states in relevant part:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

"The party seeking removal bears the initial burden of establishing federal jurisdiction." *Abraham v. Cracker Barrel Old Country Store, Inc.*, Civil Action No. 3:11cv182-HEH, 2011 WL 1790168, at *1 (E.D. Va. May 9, 2011) (*citing Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)).  No presumption favoring the existence of federal subject matter jurisdiction exists because federal courts have limited, not general, jurisdiction. *Id.* (*citing Pinkley Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999)).  Courts must construe removal jurisdiction strictly. *Id.* (*citing Mulcahey*, 29 F.3d at 151.)  "'If federal jurisdiction is doubtful, a remand is necessary.'" *Id.* (*quoting Mulcahey*, 29 F.3d at 151.)

A defendant may remove a civil action initially filed in state court if plaintiff could have originally brought the action in federal court. *Id.* at *2 (*citing Yarnevic v. Brink's Inc.*, 102 F.3d 753, 754 (4th Cir. 1996)); *see also* 28 U.S.C. § 1441(a).  Federal diversity jurisdiction requires complete diversity of citizenship. *Abraham*, 2011 WL 1790168, at *2. (*citing Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990)); *see also* 28 U.S.C. § 1332(a)(1).  "'[T]he citizenship of each plaintiff [must be] diverse from the citizenship of each defendant.'" *Abraham*, 2011 WL 1790168, at *2 (*quoting Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (alteration in original)).

4

## B.     The Fraudulent Joinder Doctrine

The fraudulent joinder doctrine operates as an exception to the complete diversity

requirement, permitting a district court to disregard, for jurisdictional purposes, the citizenship of

certain nondiverse defendants, assume jurisdiction over a case, and dismiss the nondiverse

defendants, thereby retaining jurisdiction. *Id. (citing Mayes v. Rapoport*, 198 F.3d 457, 461 (4th

Cir. 1999)). "To show fraudulent joinder, the removing party must demonstrate either 'outright

fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is no possibility that the

plaintiff would be able to establish a cause of action against the in-state defendant in state

court.'" *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (*quoting Marshall v.

Manville Sales Corp.*, 6 F.3d 229, 232-33 (4th Cir. 1993) (emphasis omitted)).

"The party alleging fraudulent joinder bears a heavy burden – it must show that the

plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's

favor." *Id.* "This standard is even more favorable to the plaintiff than the standard for ruling on

a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)." *Id.* The Court is not

bound by the allegations in the pleadings, but can consider the entire record. *Mayes*, 198 F.3d at

464.

## III.  Analysis

In this case, the GM Defendants removed this action asserting that Plaintiffs fraudulently

joined Greenbrier GMC in order to defeat diversity jurisdiction. (*See* Not. of Removal 3.)

Plaintiffs object to removal and seek remand of this action to state court for three reasons:  (1)

diversity jurisdiction does not exist because the fraudulent joinder doctrine does not apply; (2)

the GM Defendants waived any right to remove as a result of seeking relief in the state court; and, (3) the GM Defendants did not timely remove. (Mot. Remand ¶¶ 21-30.)

Because nothing in the Court's record suggests that Greenbrier GMC acts as the alter ego of Greenbrier Volkswagen, Inc. or that Greenbrier Volkswagen, Inc. operates as an agent of Greenbrier GMC, even after resolving all issues of law and fact in the Plaintiffs' favor, Plaintiffs could not establish a cause of action against Greenbrier GMC in state court. Accordingly, the Court will recommend denial of the Motion to Remand.[7]

A. No Possibility Exists that Plaintiffs Could Establish a Cause of Action Against Greenbrier GMC in State Court Because Greenbrier GMC Did Not Sell the Envoy

1. Facts Before the Court

Neither the GM Defendants nor Greenbrier GMC argues that Plaintiffs pled fraudulent jurisdictional facts. Instead, both contend that because Greenbrier GMC did not sell the Envoy, Plaintiffs cannot obtain judgment against Greenbrier GMC. (GM Defs.' Opp'n 2; Greenbrier GMC Opp'n 6-9.) The GM Defendants and Greenbrier GMC rely on the sworn affidavit of Michael J. King to support their argument that Greenbrier GMC did not sell the Envoy to

---

[7] In Plaintiffs' Reply, Plaintiffs seek leave to amend their Complaint to allege additional claims against Greenbrier GMC "[i]n the event that this Court does not Remand this case to State Court forthwith." (Pls.' Reply 6.) Such claims would include civil conspiracy, fraud, and negligence arising from the "sharing, misuse, and allowed misuse" of the fictitious name "Greenbrier Volkswagen" in violation of Virginia Code § 59.1-69. (Pls' Reply 6.) Plaintiffs also seek leave to plead that Greenbrier GMC is the alter ego of Greenbrier Volkswagen, Inc. and that Greenbrier GMC is liable for the acts and omissions of its agent Greenbrier Volkswagen, Inc. (Pls.' Reply 6-7.)

This Court will not address this newly raised request in Plaintiffs' reply. The District Court should consider that motion if separately filed, and properly briefed, once this remand motion has been finally determined.

Yvonne Gregory and that therefore, Greenbrier GMC cannot be held liable.[8] (GM Defs.' Opp'n 2-8; Greenbrier GMC Opp'n 6-9.)

Michael King acts as Greenbrier GMC's treasurer and chief financial officer, sitting on Greenbrier GMC's board of directors. (King Aff. ¶¶ 3, 4.) King is familiar with Greenbrier GMC's corporate history, its business operations, and its organization. (King Aff. ¶ 5.) Prior to June 2002, Greenbrier GMC sold a variety of vehicle models, including both General Motors and Volkswagen models from a retail facility located at 1330 South Military Highway. (King Aff. ¶ 6.) During that time, Greenbrier GMC sold Volkswagen automobiles at the 1330 South Military Highway facility through a limited liability company called Greenbrier VW, LLC. (King. Aff. ¶ 7.) Greenbrier GMC owned and controlled Greenbrier VW, LLC. (King Aff. ¶ 7.) On April 30, 1990, Greenbrier GMC registered the fictitious name "Greenbrier Volkswagen" with the Virginia State Corporation Commission to further its retail sales of Volkswagen vehicles at the 1330 South Military Highway store. (King Aff. ¶ 8.)

In June 2002, Greenbrier GMC dissolved Greenbrier VW, LLC and formed a new corporation, Greenbrier Volkswagen, Inc., to sell Volkswagen automobiles from a new facility at 1248 South Military Highway. (King Aff. ¶ 9.) Greenbrier Volkswagen, Inc. operates the facility at 1248 South Military Highway. (King Aff. ¶ 10.) After Greenbrier Volkswagen, Inc., began selling Volkswagens at 1248 South Military Highway in 2002, Greenbrier GMC ceased Volkswagen sales at the 1330 South Military Highway facility. (King Aff. ¶ 11.) Since 2002,

---

[8] Greenbrier GMC attached King's affidavit to its opposition to Plaintiffs' Motion to Remand but did not identify the affidavit with an exhibit or attachment number.

Greenbrier GMC has conducted no retail sales operations at any facility other than the 1330 South Military Highway facility. (King Aff. ¶ 13.)

At all times since 2002, Greenbrier GMC and Greenbrier Volkswagen, Inc. have maintained separate corporate records, employee handbooks, sales, financing forms, and bank accounts. (King Aff. ¶ 18.) None of the partners or managers at the 1248 South Military Highway Volkswagen facility are involved in the operations of the 1330 South Military Highway GM facility, and vice versa. (King Aff. ¶¶ 16, 17.) Greenbrier GMC does not own or control Greenbrier Volkswagen, Inc. and Greenbrier Volkswagen, Inc. does not own or control Greenbrier GMC. (King Aff. ¶¶ 20, 21.)

Greenbrier GMC could find no record of the Envoy involved in the accident, which Plaintiffs allege Yvonne Gregory purchased from Greenbrier GMC. (King Aff. ¶ 24.) Greenbrier GMC has no record of any sale to Yvonne Gregory. (King Aff. ¶ 23.) At the request of Greenbrier GMC, Greenbrier Volkswagen, Inc. examined its own records and found that Greenbrier Volkswagen, Inc. sold the Envoy to Yvonne Gregory. (King Aff. ¶ 26.) The record demonstrates Greenbrier Volkswagen, Inc. sold the Envoy, even though the Envoy is a GM, and not a Volkswagen, product.

Greenbrier Volkswagen, Inc. provided a copy of the purchase order, signed by Yvonne Gregory, to Greenbrier GMC. (King Aff. ¶ 27.) The purchase order for the Envoy lists the date of sale as "8/21/2008," lists "Yvonne Banks Gregory" as the purchaser, contains the name "Greenbrier Volkswagen" at the top, and includes the 1248 South Military Highway facility address. (King Aff. ¶ 30; Mot. Remand Ex. B Email correspondence and purchase order

("Purchase Order").) According to King, Greenbrier GMC did not sell the Envoy to Yvonne Gregory and never owned, possessed, or sold the Envoy. (King Aff. ¶¶ 32, 33.)

In support of their argument that Greenbrier GMC sold the Envoy, Plaintiffs rely on records from the Virginia State Corporation Commission listing "Greenbrier Volkswagen" as the fictitious name of Greenbrier GMC. (*See* Mot. Remand ¶¶ 7-10.) As of April 9, 2012, Virginia State Corporation records continue to list "Greenbrier Volkswagen" as a fictitious name of Greenbrier GMC. (*See* Mot. Remand Ex. M State Corporation Commission Certificate of Fact ("SCC Cert. Fact") April 9, 2012.) Greenbrier GMC concedes that it has not filed a request with the SCC to terminate the registered fictitious name of "Greenbrier Volkswagen," but also states that Greenbrier GMC has not traded or done business under the name of "Greenbrier Volkswagen" since 2002. (King Aff. ¶¶ 14, 15.)

2.      **Defendants Meet the Heavy Burden of Establishing that Greenbrier Volkswagen, Inc., and not Greenbrier GMC, Sold the Envoy**

The GM Defendants and Greenbrier GMC clearly satisfy their heavy burden of showing that Plaintiffs cannot establish any negligence, breach of warranty, or Virginia Consumer Protection Act claim against Greenbrier GMC, even after resolving all issues of fact and law in Plaintiffs' favor. *See Hartley*, 187 F.3d at 424. In this case, Plaintiffs base all of their claims on Greenbrier GMC's sale of the Envoy. (*See* Compl. ¶ ¶ 53 67, 70, 75.) Because Defendants establish that Greenbrier GMC did not sell the Envoy, no possibility exists that Plaintiffs could recover against Greenbrier GMC.

Yvonne Gregory purchased the vehicle from the 1248 South Military Highway facility in 2008, six years after Greenbrier Volkswagen, Inc. began retail operations at that location.

Additionally, King, who serves as both Greenbrier GMC's and Greenbrier Volkswagen, Inc.'s Treasurer, specifically stated that Greenbrier Volkswagen, Inc. sold the vehicle to Yvonne Gregory. Greenbrier Volkswagen, Inc. admitted to selling the vehicle to Yvonne Gregory. (King Aff. ¶ 26.) The King Affidavit demonstrates that Greenbrier GMC operates as an entirely separate car dealership from Greenbrier Volkswagen, Inc. The two entities once shared a corporate history but, since 2002, have conducted business at separate locations as separate dealerships. They maintain individual bank accounts, financial records, and employee handbooks. State Corporation Commission records from 1990 simply do not overcome the fact that at the time Greenbrier Volkswagen, Inc. sold the Envoy, Greenbrier GMC and Greenbrier Volkswagen, Inc. existed as two separate businesses.

Although Plaintiffs attempt to raise concerns about the interconnected nature of Greenbrier GMC and Greenbrier Volkswagen, Inc., Plaintiffs do not raise facts inconsistent with King' sworn testimony. For instance, Plaintiffs' contention that Greenbrier GMC and Greenbrier Volkswagen, Inc. share the same corporate office and three of the same officers, (Pls.' Reply ¶ 11), is not inconsistent with King's affidavit that Greenbrier GMC and Greenbrier Volkswagen, Inc. otherwise constitute separate entities. In addition, nothing Plaintiffs raise suggests that the fictitious entity used by Greenbrier GMC acts as an alter ego for Greenbrier Volkswagen, Inc. Plaintiffs do not question the authenticity of the Buyer's Order, or the vast majority of King's sworn affidavit. As such, even viewing the facts as this Court must in this motion to remand, this record shows that, despite the fact that it was a GM vehicle, Greenbrier Volkswagen, Inc. sold the Envoy to Yvonne Gregory.

### 3. Because Greenbrier Volkswagen, Inc. Sold the Envoy, Plaintiffs Have no Cause of Action against Greenbrier GMC

Plaintiffs suggest at least one Fourth Circuit case supports a remand in this matter.

Plaintiffs' reliance on *Hartley* is misplaced. *Hartley* involved the application of South Carolina's

public duty rule, a rule of law providing "that 'public officials are generally not liable to

individuals for their negligence in discharging public duties because the duty is owed to the

public at large rather than to anyone individually.'" *Hartley*, 187 F.3d at 424 (*quoting Wells v.*

*City of Lynchburg*, 501 S.E.2d 746, 751-52 (S.C. 1998)). Unlike *Hartley*, Plaintiffs' complaint

does not involve the novel application of any rule of law,[9] but instead alleges ordinary

negligence, breach of warranty, and state law consumer protection claims against the seller and

manufacturer of a vehicle involved in a crash resulting in the death of one of the passengers. The

only issue raised remains factual: whether or not Greenbrier GMC sold the vehicle. (*See*

Compl. ¶¶ 53, 61, 66, 70, 75.) The facts before the Court plainly establish that Greenbrier

Volkswagen, Inc. sold the Envoy to Yvonne Gregory.

### B. GM Defendants Did Not Waive Their Right to Removal When They Filed Motions in State Court Prior to Removal

Plaintiffs' effort to oppose removal based on Greenbrier GMC and GMC LLC's state

court filing also fails. Plaintiffs argue that GMC LLC and Greenbrier GMC forfeited their right

to remove this action when GMC LLC filed a Motion to Transfer Venue and Greenbrier GMC

---

[9] In *Hartley*, the United States Court of Appeals for the Fourth Circuit reversed the denial of remand in part because no case on point existed to ensure that no possibility of recovery existed. 187 F.3d at 423-24. The Fourth Circuit noted that the application of the public duty rule requires "a judgment call at every turn," because "the presence or absence of each element often depends on several variables may require factual investigation." *Id.* at 424-25. The court could not say with certainty that a South Carolina state court would find Hartley's claims barred by the public duty rule. *Id.* at 425.

filed a Cross-claim against GM LLC, Motors Liquidation Company, General Motors Company,

and General Motors Corporation.[10] (Mot. Remand ¶ 29.) Although GMC LLC and Greenbrier

GMC[11] filed motions in state court, the GM Defendants did not waive their right to remove this

action because the state court never ruled on the motions. Indeed, the GM Defendants did not

seek an ultimate determination on the merits of the controversy in state court. Any attempt to

remand on the basis of waiver of the right to remove cannot succeed.

GM LLC filed its motion to transfer venue in state court prior to removal and noticed it

for hearing, but the state court never heard or ruled upon the motion and Plaintiffs never

responded to the motion. (GM Defs.' Opp'n 11.) The law makes plain that such a motion does

not seek a final determination on the ultimate merits of the controversy. *See Abraham*, 2011 WL

1790168, at*1, *6 (in the context of fraudulent joinder, finding that a state court motion to

---

[10] A defendant may waive his or her 30-day right to removal by demonstrating a clear and equivocal intent to remain in state court. *Grubb v. Donegal Mut. Ins. Co.*, 935 F.2d 57, 59 (4th Cir. 1991). However, "such a waiver should only be found in 'extreme situations.'" *Id.* (*quoting Rothner v. City of Chicago*, 879 F.2d 1402, 1416 (7th Cir. 1989)). "Clear intent to remain in state court is demonstrated when a defendant takes 'substantial defensive action' in an effort to obtain 'a final determination on the merits of the case in state court.'" *Drexler v. Inland Mgmt. Corp.*, 509 F. Supp. 2d 560, 562 (4th Cir. 2007) (*quoting Sayre Enters. v. Allstate Ins. Co.*, 448 F. Supp. 2d 733, 735 (W.D. Va. 2006)).

[11] Greenbrier GMC correctly notes that it could not waive its right to removal because it did not remove this case. Greenbrier GMC, as the nondiverse defendant served after the diverse GM Defendants, had no right to remove this action. *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought.") Likewise, "'[f]raudulently joined defendants are not required to consent to a co-defendant's notice of removal.'" *Sheppard v. BAC Home Loans Servicing, LP*, No. 3:11cv62, 2012 WL 204288, at *9 (W.D. Va. Jan. 24, 2012) (*quoting Shaffer v. Nw. Mut. Life Ins. Co.*, 394 F. Supp. 2d 814, 819 (N.D. W.Va. 2005). Regardless, the GM Defendants Notice of Removal indicates that Greenbrier GMC does not object to removal. (Not. Removal ¶ 20.)

dismiss for improper venue did not seek a final determination on the merits of the controversy); *see also Sayre Enters.*, 448 F. Supp. 2d at 734, 736 (defendant filed an answer, grounds of defense, motion craving oyer, demurrer, and objections to discovery requests prior to removing; court concluded that "[e]ven in combination, the pleadings filed by the defendant in state court do not constitute the type of 'extreme situation' that would justify a finding of waiver." (*quoting Grubb*, 935 F.2d at 59)); *Drexler*, 509 F. Supp. 2d at 563 (defendants actions in state court were directed at eliminating a *lis pendens* and not at obtaining a resolution on the merits of the cause; "the demurrer filed . . . by defendants cannot be considered to be an action taken in an effort to obtain final determination on the merits of the case."). *But see Estate of Krasnow v. Texaco, Inc.*, 773 F. Supp. 806, 807, 809 (E.D. Va. 1991) (defendant removed after state court overruled defendant's demurrer; court concluded defendant waived right to remove because "[d]efendant must not be allowed to test the waters in state court and, finding the temperature not to its liking, beat a swift retreat to federal court. Such behavior falls within the very definition of forum-shopping and is antithetical to federal-state court comity.") Accordingly, Plaintiffs' Motion to Remand based on the state court filings also will be denied.

## C.    GM Defendants Timely Removed This Action

Finally, although the Plaintiffs contend otherwise, the GM Defendants timely removed this action under 28 U.S.C. § 1446(b)(1).[12] This case became removable only after the sole

---

[12] 28 U.S.C. § 1446(b)(1) states in pertinent part:

> (b) Requirements, generally. -- (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .

nondiverse defendant Greenbrier GMC denied selling the Envoy. Such denial constituted "the initial pleading setting forth the basis" for removal. 28 U.S.C. § 1446(b)(1); *Lovern v. General Motors Corp.*, 121 F.3d 160, 161-62 (4th Cir. 1997). The GM Defendants removed four days later on the grounds of fraudulent joinder and diversity jurisdiction. *See Lovern*, 121 F.3d at 162 (defendant has thirty days from the revelation of the grounds for removal in an amended pleading, motion, order or other paper to file its notice of removal).

Plaintiffs argue the GM Defendants removed this case untimely because the GM Defendants did not file the Notice of Removal until more than thirty days after they were served with the Complaint in state Court. (Mot. Remand ¶ 30.) Plaintiffs contend that the GM Defendants denied in their Answer[13] that Greenbrier GMC sold the Envoy, meaning that the Defendants "affirmatively denied the existence of this jurisdictional fact," and failed to file their Notice of Removal within the mandatory thirty day time period. (Mot. Remand ¶ 30.)

The GM Defendants persuasively counter that the first pleading they received indicating the case was removable was Greenbrier GMC's Answer and Cross-claim, where Greenbrier GMC alleged it did not sell the Envoy. (GM Defs.' Opp'n 14.) Even viewing the record in the manner the Court must, it is clear that the Answer Plaintiffs rely upon does not establish the plain jurisdictional fact Plaintiffs contend it does. [14] The GM Defendants received a copy of this

---

[13] On approximately December 9, 2011, GM LLC demurred and answered the Complaint. (*See* Mot. Remand Ex. A GM LLC Answer & Dem. ("GM LLC Ans.") (Docket No. 15-1 at 1).) On approximately December 27, 2011, GMC moved to dismiss the Complaint. (*See* Not. Removal Ex. 5 State Court Pleadings) (Docket No. 1-5 at 28-29).) General Motors Company did not answer until March 27, 2012. (Docket No. 11.)

[14] The Court cannot credit Plaintiffs' assertion that the Defendants' state court filing clearly established a plain jurisdictional fact. While GM LLC and Greenbrier GMC did deny

pleading on March 12, 2012. (Not. Removal ¶ 13.) The GM Defendants removed on March 16, 2012, four days later. (*See* GM Defs.' Opp'n 14.) Such removal amply meets the time dictates articulated in Section 1446(b)(1).

## IV. GM LLC's Motion to Amend Answer

GM LLC seeks leave to amend its answer.[15] (Docket No. 18.) In support of its Motion, GM LLC states that "[s]ince filing its original Answer, [GM LLC] has had the opportunity to further evaluate the plaintiffs' allegations, investigate the facts and circumstances of the subject crash, and develop its available defenses." (Mem. Supp. Mot. Amend Answer to Compl. ("Mem. Supp. Mot. Amend.") 2.) GM LLC seeks leave to file its amended answer, "which better reflects the information and defenses currently available to [it]." (*Id.*) Plaintiffs did not respond to or oppose GM LLC's motion.

---

Paragraph 8 of Plaintiffs' Complaint, that paragraph included not only allegations about who sold the car, but also an allegation that Greenbrier GMC owed a duty to warn regarding the car's weak roof structure and dangerous and defective condition. (*See* Compl. ¶ 8; GM LLC Ans. ¶ 9; *See also* Not. Removal Ex. 4 Greenbrier GMC Answer & Defenses. to Compl. ("Greenbrier GMC Ans.") ¶ 8.).) GM LLC's denial does not constitute the affirmative denial of a jurisdictional fact which would start the removal time clock.

[15] Federal Rule of Civil Procedure 15(a) instructs that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court of the United States has instructed courts to "heed" this mandate, holding that amendments should be freely allowed in the absence of considerations such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) ("A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile."). Further, delay alone cannot sustain the denial of a motion seeking leave to amend, so long as such delay is not accompanied by prejudice, bad faith, or futility. *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999); *Smith v. Angelone*, 111 F.3d 1126, 1134 (4th Cir. 1997).

Because Plaintiffs' raise no claim of prejudice or futility in response to GM LLC's request to amend its answer and in light of the Court's obligation to heed the mandate of Rule 15(a), the Court RECOMMENDS GRANTING GM LLC's Motion for Leave to Amend Answer (Docket No. 17).

## V. Conclusion

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that Plaintiffs' Motion to Remand (Docket No. 15) be DENIED and that Defendant GM LLC's Motion to Amend Answer to Complaint (Docket No. 17) be GRANTED.

The parties are ADVISED that they may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Each objection should be labeled with the corresponding heading from the Report and Recommendation, should be numbered, and should identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. Failure to file specific objections to the Report and Recommendation may preclude further review or appeal from such order. *See Wright v. Collins*, 766 F.2d 841, 844-46 (4th Cir. 1985).

The Clerk is directed to send a copy of the Report and Recommendation to counsel of record and to the Honorable Robert E. Payne.

/s/ _____

M. Hannah Lauck

United States Magistrate Judge

Richmond, Virginia

Date: 12-31-12